UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CRYSTAL M. KITCHEN,

    *Plaintiff*,

*v*.                                                                              CASE NO. 12-CV-12991

COMMISSIONER OF                                         DISTRICT JUDGE BERNARD A. FRIEDMAN
SOCIAL SECURITY,                                           MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**[1]

## I.  RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.  REPORT

### A.  Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for a period of disability and Disability

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Insurance Benefits ("DIB"). This matter is currently before the Court on cross-motions for summary judgment. (Docs. 8, 10.)

Plaintiff Crystal Kitchen was 31 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 6 at 26.) Plaintiff's employment history includes work as a machine operator for three years, an assembler for one year, and a retail store bottle return clerk for one year. (Tr. at 130.) Plaintiff filed the instant claim on September 16, 2008, alleging that she became unable to work on July 25, 2006. (Tr. at 109.) A previous decision found that Plaintiff was not disabled on July 24, 2006. (Tr. at 48.) The claim was denied at the initial administrative stage. (Tr. at 52.) In denying Plaintiff's claims, the Commissioner considered fibromyalgia and disorders of back, discogenic and degenerative, as possible bases for disability. (*Id.*) On July 24, 2006, Plaintiff appeared before Administrative Law Judge ("ALJ") Henry Perez, Jr., who considered the application for benefits *de novo*. (Tr. at 11-20, 40-51.) In a decision dated October 21, 2010, the ALJ found that Plaintiff was not disabled. (Tr. at 18.) Plaintiff requested a review of this decision on November 2, 2010. (Tr. at 9-10.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on May 11, 2012, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-6.) On July 9, 2012, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.     Standard of Review**

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is

multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making

a determination of disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence

4

without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

Judicial review of the ALJ's decision is direct, "but we play an 'extremely limited' role." *Simila v. Astrue,* 573 F.3d 503, 513-14 (7th Cir. 2009). "We do not actually review whether [the claimant] is disabled, but whether the Secretary's finding of not disabled is supported by substantial evidence." *Lee v. Sullivan*, 988 F.2d 789, 792 (7th Cir. 1993). Just as "'[n]o trial is perfect,'. . . no administrative hearing or opinion is either[;] thus, in analyzing an ALJ's decision, a reviewing court is to look for 'fatal gaps or contradictions' and not 'nitpick' in search of essentially meaningless missteps." *Masters v. Astrue*, 818 F. Supp. 2d 1054, 1965 (N.D. Ill. 2011).

**C.     Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the DIB program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the SSI program of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

5

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and

considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.     ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through December 31, 2008, and that Plaintiff had not engaged in substantial gainful activity since her date last insured. (Tr. at 16.) At step two, the ALJ found that Plaintiff's fibromyalgia, arthritis in the back, knee, and neck, slipped disc, degenerative disc disease and swelling in the right knee and foot were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (*Id.*) At step four, the ALJ found that Plaintiff could perform her past relevant work as a machine operator and sorter, which were performed at the light, unskilled level. (Tr. at 18.) Alternatively, at step five, the ALJ found that Plaintiff could perform the full range of medium work. (Tr. at 16-18.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 18.)

### E.     Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff reported back pain since the 1990's, fibromyalgia since 2001, and osteoarthritis in 2002. (Tr. at 181.)

On October 23, 2005, Plaintiff was treated by Sujini Palaniswamy, M.D., for abdominal pain. (Tr. at 178.) Dr. Palaniswamy noted past medical history of fibromyalgia and he ordered a pelvic ultrasound. On October 26, 2005, an ultrasound of Plaintiff's abdomen/pelvic area showed "normal liver, gallbladder, common bile duct, bilateral kidneys, head and body of pancreas and spleen with unremarkable inferior vena cava and aorta." (Tr. at 172.) Dr. Patel found Plaintiff's

7

muscle strength to be 5/5, "[n]o evidence of knee or ankle clonus," "[n]o evidence of neurosensory deficit in both upper and lower extremities," and noted that Plaintiff's "[c]oordination [was] intact." (Tr. at 182.) Dr. Patel stated that Plaintiff's "[t]horacic spine and rib cage are normal," "[t]one and strength are symetrical," there is "no evidence of flattening or increased lumbar lordosis, . . . no muscle spasm, [n]o tenderness, [s]traight leg raising is negative" and her lower extremities are "normal." (Tr. at 183.) Plaintiff was able to "get dressed, button clothing, tie shoelaces, pick up a coin, [pick up a] pencil and write, . . . ambulate without a cane with a normal gait pattern, . . . heel walk, toe walk, . . . tandem walk, . . . sit and stand, . . . bend, . . . carry, push and pull." (*Id.*) In addition, Plaintiff's range of motion for her cervical spine, lumbar spine, shoulders, elbows, hips, knees, ankles, and wrists were all normal. (Tr. at 184-85.) Accordingly, Dr. Patel concluded that Plaintiff

> would be able to work 8 hours a day. There is no limitation in walking. There is no limitation in carrying, pushing and pulling. Grip strength is not limited in the hands. There is no limitation in climbing stairs, climbing ropes, ladders or scaffolding.

(Tr. at 183.)

Plaintiff was examined at the request of Disability Determination Services ("DDS") by L. Patel, M.D., on October 9, 2008. (Tr. at 181-83.) Dr. Patel noted that Plaintiff was "[i]ndependent in basic ADLs [activities of daily living] and personal care." (Tr. at 181.)

On January 8, 2010, Adolfo L. Melicor, M.D., determined that x-rays of the lumbar spine were "negative," showing "[n]o spondylolisthesis, spondylolysis, significant arthritis, or necroplastic change[.]" (Tr. at 195.)

On April 27, 2010, Clinton Butler, M.D., noted that "labs all normal" and that Plaintiff's "dizziness (lightheaded) resolved[.]" (Tr. at 196.)

In her Daily Activity Report, Plaintiff indicated that she lives alone, has no problem with personal care, prepares simple meals such as frozen dinners, does laundry, is able to ride in and drive a car for short trips, shops for food once or twice a month for about one hour, is able to handle her own finances, socializes with friends and family in person and on the telephone, and enjoys listening to music, watching television, and reading. (Tr. at 141-44.)

At the administrative hearing, Plaintiff was asked why she stopped working. She answered, "[b]ecause I wasn't feeling good. I had – I was diagnosed with fibromyalgia. I – with degenerative disc disease, arthritis in my back, problems with my right knee, pretty much pain through my whole body, from my neck all the way down." (Tr. at 27.) Plaintiff also testified that her supervisor at work would not abide by Plaintiff's restrictions, i.e., more frequent breaks. (*Id.*) When asked what problems she has experienced since the date of the last decision, July 24, 2006, and the date last insured, December 31, 2008, Plaintiff responded, "I just feel like, real drained. I like, I have real bad headaches. It's really hard for me to concentrate." (Tr. at 27-28.) When asked whether she was taking any medicine for the headaches, Plaintiff responded, "No, not – just – not for that. Just – I have to get like pain pills like Vicodin and all kinds of muscle relaxers." (Tr. at 28.) Plaintiff stated that her headaches last for one-half hour to 45 minutes or all day, and that she experiences them two to three times a week. (Tr. at 32.)

Plaintiff also testified that she takes Zoloft and, when asked whether she was depressed, she responded, "Yeah. I get depressed. I just feel like – I don't know – like – I just get frustrated." (Tr. at 29.) Plaintiff indicated that she could lift a gallon of milk off the floor and put it back in the refrigerator. (Tr. at 30.) Plaintiff also stated that she loses her train of thought and forgets things. (*Id.*) When asked to describe why she feels that she cannot work a full-time basic, simple job, Plaintiff responded

9

> Well, I don't sleep very good. I have trouble sleeping. I take pills to sleep because I'm very – I just can't sleep at night. I'm restless. I toss and turn. I get up in the middle of the night, walk around, go look out the window just to, you know, get my mind off of stuff. I just – I'm like sore. I mean it's even hard for me even to sit in a car to, you know, go do running around.

(Tr. at 31.) Plaintiff testified that she is able to drive but does not drive very much and that she does not have a handicap permit. (Tr. at 32.) As to household chores, Plaintiff testified that she does laundry and dishes. (Tr. at 33.) Plaintiff stated that she has not been hospitalized since she left work. (*Id.*) Plaintiff added that her right leg becomes swollen and that her doctor indicated "there's nothing they can really do for it. Just give me the pain pills for it." (Tr. at 32-33.) Plaintiff stated that she is only treated by Dr. Butler. (Tr. at 33.)

At the administrative hearing, the ALJ asked the Vocational Expert ("VE") to consider an individual with Plaintiff's background who "has an exertional limitation of lifting 50 pounds occasionally, 25 pounds frequently. We put this individual at the unskilled level." (Tr. at 36.) The VE responded that such a person would be able to perform all of Plaintiff's past relevant work. In addition, the VE testified that the following sedentary, unskilled jobs are available in Southeastern Michigan that also include a sit-stand option: 4,500 cashier II, surveillance monitor, and information clerk jobs and 3,500 bench inspector and assembler jobs. (*Id.*) When asked by the ALJ, the VE responded that his testimony was consistent with the Dictionary of Occupational Titles ("DOT") but that the DOT does not address sit-stand options. (Tr. at 37-38.)

  **F. Analysis and Conclusions**

  **1. Legal Standards**

The ALJ determined that during the time Plaintiff qualified for benefits, she possessed the residual functional capacity to return to her past relevant work as a machine operator and sorter. (Tr. at 18.) The Commissioner's regulations state that the agency "will first compare our

assessment of your residual functional capacity with the physical and mental demands of your past relevant work." 20 C.F.R. § 416.960(b); 20 C.F.R. §404.1560(b). "If you can still do this kind of work, we will find that you are not disabled." 20 C.F.R. § 404.1520(f); 20 C.F.R. § 404.1560(b)(3). "'By referring to the claimant's ability to perform a "kind" of work, [the regulations] concentrate[] on the claimant's capacity to perform a type of activity rather than his ability to return to a specific job or to find one exactly like it.'" *Boucher v. Apfel*, No. 99-1906, 2000 WL 1769520, at *7 (6th Cir. Nov. 15, 2000) (quoting *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995)).

An "ALJ [is] not required to solicit testimony from a VE in reaching his conclusion" that a plaintiff is able to perform her past relevant work. *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010) (citing 20 C.F.R. § 404.1560(b)(2) ("We *may* use the service of vocational experts . . . to help us determine whether you can do your past relevant work[.]") (emphasis in original); *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) ("The regulations permit an ALJ to use the services of a vocational expert at step four to determine whether a claimant can do his past relevant work . . . .")). Should the ALJ use the services of a VE, the ALJ need only incorporate those limitations into the hypothetical question that he finds credible and supported by the record. *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

Alternatively, the ALJ found that Plaintiff possessed the residual functional capacity to perform a limited range of medium work with some nonexertional limitations. (Tr. at 16-18.) "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. 404.1567(c).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2. Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 8.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld. Specifically, Plaintiff contends that the ALJ committed legal error when he did not give controlling weight to Dr. Butler's opinion or a sufficient explanation of the weight he afforded the opinion. (Doc. 8 at 12-16.)

"Medical opinions are statements from physicians and psychologists or other 'acceptable medical sources' that reflect judgments about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." SSR 06-3p, 2006 WL 2329939, at *2 (2006).

The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides

for an opinion, the more weight we will give that opinion." 20 C.F.R. § 404.1527(c)(3). "Moreover, when the physician is a specialist with respect to the medical condition at issue, . . . her opinion is given more weight than that of a non-specialist." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011).

Since the Commissioner is responsible for determining whether a claimant meets the statutory definition of disability, the ALJ "will not give any special significance to the source of an opinion[, including treating sources], on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section[,]" i.e., whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, residual functional capacity, and application of vocational factors. 20 C.F.R. § 404.1527(d)(3). A "[d]octor's notation in his notes of a claimed symptom or subjective complaint from the patient is not medical evidence; it is the 'opposite of objective medical evidence.' [Thus,] [a]n ALJ is not required to accept the statement as true or to accept as true a physician's opinion based on those assertions." *Masters v. Astrue*, 818 F. Supp. 2d 1054, 1067 (N.D. Ill. 2011). "Otherwise, the hearing would be a useless exercise." *Id.*

In addition, "a treating physician's assessment may be unreliable because of the bias he or she may bring to the disability evaluation," i.e., he or she "'may want to do a favor for a friend and client, and so the treating physician may too quickly find disability.'" *Id.* at 1073 (quoting *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001)). "Additionally, we have noted that the claimant's regular physician may not appreciate how her patient's case compares to other similar cases, and therefore that a consulting physician's opinion might have the advantages of both impartiality and expertise." *Dixon*, 270 F.3d at 1177. "[O]nce well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight . . . [but] 'is just one more piece of evidence for the administrative law judge to weigh . . . .'" *Bauer*

13

*v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) (quoting *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006)). Once the treating source is placed on the same level as other medical opinions, the treating source opinion should not be subjected to "greater scrutiny" than the non-treating sources, especially when there are more flagrant inconsistencies in the opinions of the non-treating sources. *Gayheart v. Comm'r of Soc. Sec.*, ___ F.3d ___, 2013 WL 896255, at *13 (6th Cir. 2013).

If the ALJ declines to give controlling weight to a treating source's opinion, then he must use the following factors to determine what weight the treating source opinion should be given: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson*, 378 F.3d at 544. These factors may be applied to all medical opinions, not just treating sources. SSR 06-3p, 2006 WL 2329939, at *3 (2006). However, because of the special status of treating source opinions, where the ALJ "failed to conduct the balancing of factors to determine what weight should be accorded these treating source opinions . . . , [t]his alone constitutes error." *Cole v. Comm'r of Soc. Sec.,* 652 F.3d 653, 660 (6th Cir. 2011) (quoting *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009)).

A physician qualifies as a treating source if the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "Acceptable medical sources" who can be considered treating sources include "licensed or certified psychologists." SSR 06-03p, 2006 WL 2329939, at *1-2 (2006). After treating sources, a "nontreating source, who physically examines the patient 'but does not have, or did not have an ongoing treatment relationship with' the patient, falls next along the continuum." *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439

(6th Cir. 2012) (quoting *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007)). "'The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 F. App'x 279, 284 (6th Cir. 2003) (quoting *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)).

"Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5 (1996). *See also Rogers*, 486 F.3d at 242. "This requirement is not simply a formality; it is to safeguard the claimant's procedural rights." *Cole*, 2011 WL 2745792, at *4. "[A] failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

Although Plaintiff contends that the ALJ failed to properly weigh and discuss Dr. Butler's opinion, I suggest that there is no opinion evidence in the record from Dr. Butler for the ALJ to have discussed. The only evidence presented from Dr. Butler was where he noted that "labs all normal" and that Plaintiff's "dizziness (lightheaded) resolved" on April 27, 2010. (Tr. at 196.) I suggest that the ALJ accurately summarized this evidence when the ALJ stated that "all of Claimant's tests (labs) came back normal" and that "Claimant's doctors did not give her any limitations or restrictions." (Tr. at 17.) A finding of non-disability is consistent with Dr. Butler's

notations that Plaintiff's lab work was normal and her dizziness resolved. Consequently, to the extent Dr. Butler's notations are opinion evidence, the ALJ gave the opinion controlling weight. There is no need for the ALJ to explain the weight given an opinion if the opinion is not discounted. *See Wilson*, 378 F.3d at 544. I therefore suggest that the ALJ did not commit any error.

I further suggest that the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence. I suggest that this is the unusual case where a contrary decision would not be supported by substantial evidence. Although Plaintiff self-reported diagnoses of fibromyalgia and arthritis, the record contains no opinion from a treating source actually making such a diagnosis. Dr. Palaniswamy noted past medical history of a diagnosis of fibromyalgia, but there is not even a notation by a doctor diagnosing that condition in the record evidence. (Tr. at 172.)

Even assuming these conditions were diagnosed by a medical doctor, substantial evidence supports the ALJ's findings that these impairments are not disabling. Plaintiff's examinations were largely normal. An ultrasound of Plaintiff's abdomen/pelvic area showed "normal liver, gallbladder, common bile duct, bilateral kidneys, head and body of pancreas and spleen with unremarkable inferior vena cava and aorta." (Tr. at 172.) Dr. Patel found Plaintiff's muscle strength to be 5/5, there was "[n]o evidence of knee or ankle clonus[,]" "[n]o evidence of neurosensory deficit in both upper and lower extremities," and Plaintiff's "[c]oordination [was] intact." (Tr. at 182.) Moreover, Dr. Patel found that Plaintiff's thoracic spine and rib cage were normal, her tone and strength was symetrical, there was no evidence of flattening or increased lumbar lordosis, no muscle spasms, no tenderness, and her lower extremities were normal. (Tr. at 183.)[2] Plaintiff was able to "get dressed, button clothing, tie shoelaces, pick up a coin, [pick up a] pencil and write, . . . ambulate without a cane with a normal gait pattern, . . . heel walk, toe walk,

---

[2]These findings are at odds with the reported diagnosis of fibromyalgia. *See Rogers v. Commissioner*, 486 F.3d 234, 244 (6th Cir. 2007) (fibromyalgia is diagnosed and assessed by testing "a series of focal points for tenderness").

16

and tandem walk, . . . sit and stand, . . . bend, . . . carry, push and pull." (*Id.*) In addition, Plaintiff's range of motion for her cervical spine, lumbar spine, shoulders, elbows, hips, knees, ankles, and wrists were all normal. (Tr. at 184-85.) Accordingly, Dr. Patel concluded that Plaintiff

> would be able to work 8 hours a day. There is no limitation in walking. There is no limitation in carrying, pushing and pulling. Grip strength is not limited in the hands. There is no limitation in climbing stairs, climbing ropes, ladders or scaffolding.

(Tr. at 183.) Dr. Patel noted that Plaintiff was "[i]ndependent in basic ADLs [activities of daily living] and personal care." (Tr. at 181.) On January 8, 2010, Dr. Melicor determined that x-rays of the lumbar spine were "negative," showing "[n]o spondylolisthesis, spondylolysis, significant arthritis, or necroplastic change[.]" (Tr. at 195.) There is no evidence contradicting the above findings and opinions. I therefore suggest that substantial evidence supports the ALJ's findings that Plaintiff does not have disabling impairments.

In addition, Plaintiff's treatment consisted of prescription medication only. Such modest treatment is inconsistent with a finding of disability. *See Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001 (6th Cir. 2011); *Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 334-35 (6th Cir. 2007).

Finally, I suggest that the ALJ's findings are supported by Plaintiff's own statements that she lives alone, has no problems with personal care, prepares simple meals such as frozen dinners, does laundry, is able to ride in and drive a car for short trips, shops for food once or twice a month for about one hour, is able to handle her own finances, socializes with friends and family in person and on the telephone, and enjoys listening to music, watching television, and reading. (Tr. at 141-44.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

### 3.     Conclusion

For all these reasons, after review of the record, I suggest that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III. <u>REVIEW</u>

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                s/ *Charles E Binder*
                                                CHARLES E. BINDER
Dated: March 27, 2013                  United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: March 27, 2013         By    s/Patricia T. Morris
                                    Law Clerk to Magistrate Judge Binder